**JEANETTE SCHUTZ and ELSA PENUELA,**

      **Plaintiffs,**

-vs-              Case No. 6:11-cv-1296-Orl-31DAB

**SECRETARY, DEPARTMENT OF STATE; UNITED STATES AMBASSADOR TO COLUMBIA; OFFICER, IMMIGRANT VISA UNIT; SECRETARY, DEPARTMENT OF HOMELAND SECURITY; DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES; DIRECTOR, FEDERAL BUREAU OF INVESTIGATIONS; and U.S. ATTORNEY GENERAL,**

      **Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 10) filed by the Defendants and the response in opposition (Doc. 11) filed by the Plaintiffs.

**I. Background**

Plaintiff Jeanette Schutz ("Schutz"), an American citizen, seeks to bring her mother, Plaintiff Elsa Penuela ("Penuela"), to the United States from Colombia. By way of the instant suit, the Plaintiffs seek to have the Court compel the Defendants to "properly complete their review" of the "Application for Immigrant Visa and Alien Registration" (henceforth, the "Visa Application") submitted by Penuela.

According to the allegations of the Complaint for Issuance of Writ of Mandamus and/or Declaratory Judgment (Doc. 1) (henceforth, the "Complaint"), in January 2008 Schutz filed a Petition for Alien Relative (henceforth, the "Petition") for her mother with United States Citizenship and Immigration Services. The Petition was approved and forwarded to the State Department. On January 3, 2011, Penuela appeared at the United States Consular Office in Bogota for an interview. On that date, the Plaintiffs allege, the Visa Application was refused, and since then the Consular Office has continued to refuse to issue the visa. According to the Plaintiffs, however, no final decision has been reached in regard to Penuela's application. Rather, they have been informed that additional "administrative processing" is required.

The Defendants contend that the refusal on January 3, 2011 was a final decision. They assert that the administrative processing that has been discussed with the Plaintiffs is simply an opportunity to cure the problems that led to the denial rather than something that is delaying issuance of the final decision. Because a final decision has been made, the Defendants argue, this Court lacks subject matter jurisdiction over this dispute. The Defendants further contend that, even if the Court were to find that it possessed jurisdiction, the matter is moot, because the Plaintiffs have obtained the relief that they seek – a review of Penuela's Visa Application.

## II.     Legal Standards

### A.     Consular Nonreviewability

Congress possesses plenary power "to make policies and rules for exclusion of aliens .... [and] has delegated conditional exercise of this power to the Executive [branch]." *Kleindienst v. Mandel*, 408 U.S. 753, 769-70, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). The executive's discretionary exercise of this power generally escapes judicial review. *United States ex rel. Knauff*

*v. Shaughnessy*, 338 U.S. 537, 543, 70 S.Ct. 309, 94 L.Ed. 317 (1950) (finding that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."). The doctrine of consular nonreviewability holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise. *De Castro v. Fairman*, 164 Fed.Appx. 930 (11th Cir. 2006) (*per curiam*) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).

### B. Rule 12(b)(1)

Attacks on subject matter jurisdiction come in two forms, "facial" and "factual" attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir.1990). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. *Id.* at 1529. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Id.* In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Id.* When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue. *Morrison v. Amway Corp.*, 323 F.3d. 920, 925 (11th Cir. 2003) (citing *Lawrence*, 919 F.2d at 1529).

## III. Analysis

The Defendants do not explicitly label their Rule 12(b)(1) attack as "facial" or "factual". The Court will therefore consider both forms.

**Facial Challenge**

In the instant case, the Plaintiffs do not assert that the visa has been denied. Instead, they assert in the Complaint that the application "has remained pending for more than 6 months." (Doc. 1 at 2). Taking these allegations as true, no consular official has yet decided whether or not to issue the visa, and the doctrine of consular nonreviewability would not apply. Accordingly, any facial attack on the Complaint fails.

**Factual Challenge**

The primary dispute here is the proper interpretation of a form given to Penuela on January 3, 2011 after her interview at the United States Embassy in Bogota. The document – hereinafter, the "Bogota Embassy Form" – was attached to the Complaint, and was written in Spanish. Along with the instant motion, the Defendants have provided an English translation of the Bogota Embassy Form.[1]

The form is titled "IMMIGRANT VISAS" with a subheading that reads "UNITED STATES EMBASSY - BOGOTA, COLOMBIA." Below these headings are spaces to be filled out for "Category," "Case Number," "Name of the Beneficiary" and "Date". Just below this, the document states the following: "Under section 221(g) of the Immigration and Naturalization Act, this office regrets to inform you that we will not be able to issue your resident visa at this time." (Doc. 10 at 10).

The document then informs the recipient that "Unless told otherwise, only one applicant needs to return for the next interview". (Doc. 10 at 10). The next sentence on the form reads "To

---

[1]The Plaintiffs do not dispute the accuracy of the translation.

overcome this ineligibility, you need to present the following:" and is followed by a long list of items with check boxes in front of them. Among many others, the items include such things as documents demonstrating family relationships, such as birth certificates or marriage certificates; financial evidence such as a Form 1040 or a W2; or administrative requirements such as photographs or a passport. (Doc. 10 at 10). A portion of the list is subtitled "Others". That portion includes the only item that was checked on the Bogota Embassy Form that was provided to Penuelo. The checked item reads as follows: "Your application for visa has been retained until we complete internal administrative processing. We will contact you as soon as the process has concluded to advise you of your next steps." (Doc. 10 at 10).

The Defendants argue that this document demonstrates that a final decision has already been made. They cite to portions of two federal regulations that govern the topic, which provide in pertinent part:

> When a visa application has been properly completed and executed before a consular office in accordance with the provisions of INA[2] and the implementing regulations, the consular office must either issue or refuse the visa under INA 212(a) or INA 212(g) or other applicable law.

22 C.F.R. § 42.81(a).

> When an immigrant visa is refused, an appropriate record shall be made in duplicate on a form prescribed by the Department. The form shall be signed and dated by the consular officer. The consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available. . . . If the ground of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates an intention to submit such evidence, all documents may, with the consent of the alien, be retained in the consular files for a period not to exceed one year.

---

[2]The Immigration and Naturalization Act.

22 C.F.R. § 42.81(b).

The Defendants argue that 22 C.F.R. § 42.81(a) compelled the consular officer to "either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law," that 22 C.F.R. § 42.81(b) compelled the consular officer to notify Penuela and identify the statutory basis for removal, and that the Bogota Embassy Form demonstrates that both of these things occurred. (Doc. 10 at 6). But 22 C.F.R. § 42.81(a) only requires issuance or refusal "[w]hen a visa application has been properly completed and executed." The Bogota Embassy Form suggests that the application was flawed or, at least, that the consular office was unable to tell at that time whether it had been properly completed and executed. It informs Penuela that she "need[s] to complete the following" as-yet-unidentified steps. The document suggests that she will be able to overcome her (apparently temporary) ineligibility by presenting some information or taking some other steps. Rather than a refusal to issue a visa, the form is most reasonably interpreted as a notice that the ultimate decision has not yet been made.

The Defendants argue that the consular office followed the requirements set forth in 22 C.F.R. § 42.81(b) for a refusal, further demonstrating that a refusal occurred. But that regulation requires notice of the provision of law on which the refusal is based, and no such notice was provided here. Rather, the consular office simply referred to a broad portion of the Immigration and Naturalization Act and stated that it will not be issuing a visa "at this time". The cited portion of the INA – Section 221(g), which is codified at 8 U.S.C. § 1182 – includes dozens of categories of aliens ineligible for visas. These range from individuals with communicable diseases or without proof of certain vaccinations to those who have engaged in human trafficking or who have been affiliated with the Communist Party or who seek entry so as to perform unskilled labor. 8

U.S.C. § 1182. Simply citing to this section cannot be said to "inform the applicant of the provision of law ... on which the refusal is based." *Compare De Castro v. Fairman*, 164 Fed. Appx. 930, 931-32 (11th Cir. 2006) (noting that, two months after her interview at the Bogota embassy, the petitioner was notified by the consular officer that "her application was rejected pursuant to [INA] § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C)," which renders ineligible anyone believed to have been "an illicit trafficker in any controlled substance or in any listed chemical ... or ... a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking"). Moreover, the language accompanying the citation to Section 221(g) in the Bogota Embassy Form explicitly informed Penuela that processing has not yet been completed, contradicting any suggestion that the final decision had been made.

On this record, the Court finds that the doctrine of consular nonreviewability does not apply.

**Mootness**

The Defendants assert that the Plaintiff's efforts to force the consular office to make a decision on her application are moot, in that the decision has already been made. But as discussed above, the record tends to show that the consular office held off on making the decision pending

additional internal processing. Accordingly, for the same reason that the doctrine of consular nonreviewability does not apply, the case is not moot.

**Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 10) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 31, 2012.

```
                              _____
                                    GREGORY A. PRESNELL
                                 UNITED STATES DISTRICT JUDGE
```

Copies furnished to:

Counsel of Record
Unrepresented Party